# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| PENFORD CORPORATION and PENFORD PRODUCTS CO., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA and ACE AMERICAN INSURANCE COMPANY, <br><br> Defendants. | Case No.: 1:09cv13 <br><br> **BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AS TO INTERROGATORIES 5, 6 AND 7, REQUESTS FOR PRODUCTION 2, 3, 4 AND 5, AND DEPOSITION TOPICS 22, 23 AND 24** |

COME NOW Defendants, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA and ACE AMERICAN INSURANCE COMPANY (collectively, the "Insurers"), by and through their attorneys of record, pursuant to Federal Rule of Civil Procedure 26(c)(1) and Local Rule 7(d), and, in support of their Motion for Protective Order as to Interrogatories 5, 6 and 7, Requests for Production 2, 3 4 and 5, and Deposition Topics 22, 23 and 24, state:

## TABLE OF CONTENTS

ARGUMENT..................................................................................................................4

    A.    Information and Documents Concerning Other Flood Claims is Irrelevant to Penford's Claims in This Action ...........................................................................4

    B.    Information and Documents Concerning Any Bad Faith Claims is Irrelevant to Penford's Claims in This Action and, Further, the Request is Overbroad and Unduly Burdensome ......................................................................................12

CONCLUSION............................................................................................................18

1

# INTRODUCTION

Penford seeks information and documents concerning other claims and lawsuits presented to or filed against the Insurers as a result of the 2008 flooding of the Cedar River, as follows:

**Plaintiffs' First Set of Interrogatories Directed to Defendants**

5. Please **IDENTIFY**, including the **IDENTITIES** of the policyholder and the policyholder's counsel, all claims made by policyholders of **YOURS** for coverage for property damage, time element losses (including but not limited to business interruption losses), contingent time element losses, extra expenses, debris removal, or professional fees as a result of the **JUNE 2008 FLOOD**.

6. Please **IDENTIFY**, including the **IDENTITIES** of the policyholder and the policyholder's counsel, all pending or settled lawsuits filed against **YOU** arising out of policyholder coverage claims for losses resulting from the **JUNE 2008 FLOOD.**

*See* Exhibit A.

**Plaintiffs' Second Set of Requests for Production of Documents Directed to Defendants**

2. All **DOCUMENTS RELATED TO** any claims made by policyholders of **YOURS** for coverage for property damage, time element losses (including but not limited to business interruption losses), contingent time element losses, extra expenses, debris removal, or professional fees as a result of the **JUNE 2008 FLOOD**.

3. All **DOCUMENTS RELATED TO** any pending or settled lawsuits against **YOU** arising out of policyholder coverage claims for losses resulting from the **JUNE 2008 FLOOD.**

*See* Exhibit B.

**Plaintiffs' Notice to Take Oral Depositions under Rule 30(b)(6)**

22. All claims made by policy holders of yours for coverage for property damage, time element losses (including but not limited to business interruption losses), contingent time element losses, extra expenses, debris removal, or professional fees as a result of the Cedar River flood of June 2008.

23. All pending or settled lawsuits against you arising out of policyholder coverage claims for losses resulting from the Cedar River flood of June 2008.

*See* Exhibit C.

Additionally, Penford seeks information concerning "any bad faith claims" asserted against the Insurers since 2005 relating to an alleged failure to properly or timely pay certain claims, as follows:

### Plaintiffs' First Set of Interrogatories Directed to Defendants

7. Please **IDENTIFY**, including the **IDENTITIES** of the policyholder and the policyholder's counsel, all bad faith claims asserted against **YOU** since 2005 **RELATING TO YOUR** alleged failure to properly or timely pay claims for time element losses (including but not limited to business interruption losses), contingent time element losses, extra expenses, debris removal, or professional fees.

*See* Exhibit A.

### Plaintiffs' Second Set of Requests for Production of Documents Directed to Defendants

4. All **DOCUMENTS RELATED TO** any bad faith claims asserted against **YOU** since 2005 **RELATING TO YOUR** alleged failure to properly or timely pay claims for time element losses (including but not limited to business interruption losses), contingent time element losses, extra expenses, debris removal, or professional fees.

*See* Exhibit B.

### Plaintiffs' Notice to Take Oral Depositions under Rule 30(b)(6)

24. All bad faith claims asserted against you since 2005 relating to your alleged failure to properly or timely pay claims for time element losses (including but not limited to business interruption losses), contingent time element losses, extra expenses, debris removal, or professional fees.

*See* Exhibit C.

All of the information sought is irrelevant to Penford's breach of contract and bad faith claims. Additionally, Penford's requests concerning other bad faith claims are overbroad and responding to those requests would be unduly burdensome. For these reasons, the Court should issue a protective order and preclude Penford from obtaining any of the information sought.

**ARGUMENT**

**A. Information and Documents Concerning Other Flood Claims is Irrelevant to Penford's Claims in This Action.**

Penford has asserted claims of breach of contract and bad faith against the Insurers relating to its insurance claim for loss and damage sustained as a result of the June 2008 flooding of the Cedar River. Penford seeks information concerning *other claims* arising out of the 2008 flooding of the Cedar River presented by *other policyholders*. This information is irrelevant to Penford's claims in this action and should be protected from discovery.

Pursuant to Federal Rule of Civil Procedure 26(b), parties may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). In a discovery context, relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Marook v. State Farm Mut. Auto. Ins. Co.,* ___ F.R.D. ___, 2009 WL 2447025 (N.D. Iowa) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)). Under the facts and circumstances of the instant case, even under this broad standard, claims and lawsuits of *other policyholders* arising out of the 2008 flooding of the Cedar River are not relevant to Penford's breach of contract and bad faith claims.

With respect to Penford's breach of contract claim, Penford asserts the Insurers breached the insurance contract by limiting their payments to Penford to $20 million – the sum of the $10 million sublimit for flood Zone A at the Cedar Rapids Plant and the $10 million sublimit for flood Zone B at the Cedar Rapids Plant (the "Cedar Rapids flood sublimits"). For its bad faith claim, Penford asserts the Insurers failed to properly resolve the claim for damage in excess of the $20 million they paid for loss and damage in Zones A and B and to timely make their $20

million payment.  Resolution of each of these claims requires the Court to construe the applicable policy language (which both parties have addressed and argued in their respective pending summary judgment motions) and to consider the actions of Penford in presenting and documenting its claim and of the Insurers in adjusting and paying the claim under the applicable policy language.  Significantly, Penford has represented to the Court in its Motion for Partial Summary Judgment that the amount of insurance available for loss and damage in flood Zones A and B at the Cedar Rapids facility can be determined by the Court without reference to any extrinsic evidence whatsoever.

The policy language, specifically the "Limits" section which governs the application of the policy sublimits, and the entire policy in which it appears, is a manuscript form developed by Penford and/or its insurance broker, Marsh USA, Inc. ("Marsh").  *See* Defendants' Appendix in support of motion for partial summary judgment (Dkt. no. 40-05), Affidavit of Timothy Scott (App. 10-13) ¶¶ 10-14, Affidavit of Justin Weltscheff (App. 95-98) ¶¶ 10-14.  The policy contains Penford's/Marsh's own desired verbiage deemed necessary by them to suit Penford's coverage specifications including, notably, the language of the "Limits" section.  *Id.*  The policy is specific and unique to Penford and is not a standard form.  Hence, the adjustment and payment of Penford's claim, carried out pursuant to the terms and conditions of Penford's policy, is specific and unique to Penford.  Even if the Insurers contributed in some way to the adoption of the "Limits" language at issue (as Penford is expected to argue), the wording that Penford/Marsh and the Insurers settled on resulted from their negotiations.  The parties' negotiations, and the policy terms that emerged from those negotiations, are unique to Penford and the Insurers.  Because other policyholders making claims as a result of the 2008 flood had either "form"

policies or their own manuscript policies, the adjustment and payment of those claims has no bearing on Penford's breach of contract or bad faith claims.

Significantly (and tellingly), Penford has not even limited its requests to other 2008 Cedar River flood claims involving a dispute over location specific – flood zone based sublimits (like the Cedar Rapids flood sublimits). Given that the dispute here involves a very limited and unique issue – the scope of the Cedar Rapids flood sublimits (an issue that Penford has already conceded can be resolved without reference to any extrinsic evidence), the information sought by Penford will not lead to other matters that could bear on any issue that is or may be in this case. How the Insurers handled other, generic flood claims simply has no relevance to how they interpreted the Cedar Rapids flood sublimits and handled Penford's $70 million claim for loss and damage.

Courts across the country addressing the relevance of other claims asserted by other policyholders have routinely held that other claims are irrelevant to the plaintiff insured's breach of contract and bad faith claims. They have done so even where the insured's policy was a standard form, rather than a specially negotiated manuscript form with unique terms and provisions as Penford has, here. For instance, in *Ramirez v. American Family Mut. Ins. Co.*, 652 N.E.2d 511 (Ind. App. 1995), the insureds sought coverage for water damage that occurred after their sump pump failed during an ice storm power outage. The plaintiffs sought documents indicating that the insurer had paid claims of other insureds arising from the same ice storm. The insurer objected to the request, claiming that the documents were irrelevant, privileged, not likely to lead to the discovery of admissible evidence and that the request was generally burdensome and oppressive. The court held that the information sought was not relevant to the coverage issue. According to the court, insurance coverage is a legal question based on the terms of the

6
Case 1:09-cv-00013-LRR-JSS   Document 52-2   Filed 11/06/09   Page 6 of 20

underlying insurance contract. The plaintiff homeowners and the insurer were the only parties to that contract. Information regarding other claims made by other insureds under other contracts was not relevant to the coverage afforded under plaintiffs' policy.

Similarly, in *Moses v. State Farm Mut. Auto. Ins. Co.*, 104 F.R.D. 55 (D.C. Ga. 1984), the plaintiff insured sued the defendant insurer for breach of contract in failing to pay chiropractic expenses and lost income. The plaintiff also asserted breach of the duty of good faith in violation of a Georgia statute. In discovery, the plaintiff sought information concerning no-fault claims for payment of chiropractic care and treatment expenses submitted by other insureds to the insurer and handled by a particular adjuster. The court held the information was not relevant to the issues in the case and not likely to lead to admissible evidence. Recognizing that the issues in the case were limited to the insurer's conduct regarding the insured's claim for insurance benefits and to the adequacy of the insurer's reasons for that conduct, the court declared that the insurer's conduct regarding the insurance claims of others was of no consequence to the case. The insured could determine the reasons for the insurer's conduct with respect to her claim by deposing the insurer's employees and others who were involved in the decision not to pay the amounts in question. *See also Cunningham v. Standard Fire Ins. Co.*, 2008 WL 2902621 (D. Col. 2008) (insured sought claim files of other homeowner insureds where insurer had paid money for damage resulting from a burst pipe; insurer's conduct with regard to other claims is not relevant to whether plaintiff insured can prove a breach of contract or bad faith with respect to his claims and will not lead to the discovery of admissible evidence); *Taco, Inc. v. Federal Ins. Co.*, 2007 WL 4269810 (D.R.I.) (product liability claims asserted against insured; insured sought documents relating to the interpretation or application of biological agents exclusion by defendant insurer in connection with other insureds' claims;

documents regarding the claims of other insureds is not relevant and, even if relevant, production would be disproportionately burdensome; the issues in this case are limited to the insurer's conduct regarding the insured's claim for insurance benefits and to the adequacy of the insurer's reasons for that conduct; the insurer's conduct regarding the insurance claims of others is of no consequence); *Retail Ventures, Inc. v. National Union Fire Ins. Co.*, 2007 WL 3376831 (S.D. Ohio) (plaintiff insured filed declaratory judgment action seeking defense and indemnification in lawsuit asserting computer hijacking claims; insured sought information or documents regarding claims by other policyholders for coverage for computer fraud losses; the court is not persuaded that information related to other policyholders' claims and complaints is relevant); *Plastic Research and Development Corp. v. Houston Cas. Co.*, 2006 WL 2523450 (W.D. Ark. 2006) (insured filed declaratory judgment action seeking defense and indemnification to lawsuit asserting breach of contract/unjust enrichment/conversion/breach of fiduciary duty for failure to pay royalties; claim files of other insureds against whom similar claims had been made are not relevant; in resolving the case, determinations will be made as to whether, taking the contract as a whole, the exclusion relied upon by the insurer is expressed in clear and unambiguous language and to what extent the facts of the underlying lawsuit fall within the exclusion; insured has not shown that insurer's past coverage decisions regarding the application of the exclusion at issue is relevant to a claim or defense in the instant action); *Connecticut Indem. Co. v. Markman,* 1993 WL 452104 (E.D. Pa. 1993) (in action against insurer for breach of contract and bad faith, requests for information concerning demands for arbitration insurer received under other patent enforcement litigation policies was irrelevant; insurer's conduct toward insured was at issue, not insurer's conduct toward other insureds, and any demands for arbitration from other insureds would involve circumstances unique to each policyholder); *Oklahoma Publishing Co. v.*

8

*Continental Ins. Co.*, 1991 WL 323804 (W.D. Okla. 1991) (insured sued for environmental pollution; insurer denied coverage on basis of pollution exclusion; insured brought declaratory judgment action and sought information and documents regarding other insureds' claims; the court held that under Oklahoma law, the extrinsic evidence sought by plaintiff is not relevant absent a finding of ambiguity; since no finding of ambiguity had been made in the case, the claim files of other insureds was irrelevant); *Leeson v. State Farm Mut. Auto. Ins. Co.,* 546 N.E.2d 782 (Ill. App. 1st Div. 1989) (in insured's claim that insurer breached the contract and unreasonably and vexatiously refused to pay medical expenses, the issue was whether insured's medical treatment and expenses were reasonable and necessary; information concerning 2,100 other medical payments claims submitted to insurer were not at all material or relevant); *United States Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783 (Fla. App. 2nd Dist. 1982) (insured sued insurer for breach of contract and bad faith in failing to pay claim under blanket bond and sought information and documents concerning claims and lawsuits against insurer by third parties under similar blanket bonds; details concerning the manner in which insurer handled third parties' claims on similar bonds was not even remotely relevant to the disposition of the instant case; instant case had to be decided upon its own peculiar facts); *Bourne v. Seal,* 203 N.E.2d 12 (Ill. App. 1st Dist. 1964) (in suit against insurer arguing that policy was in effect at time of accident and further that it was estopped from denying coverage because it had provided a defense to insured, discovery requests seeking production of insurer's books, accounts and records, premium payments by insured and all other disbursements for particular time period were too broad and not relevant to the litigation).

  Penford has previously argued, in its resistance papers to the Insurers' motion for protective order and request for scheduling conference, that information and documents

9

concerning the claims and lawsuits of other policyholders are relevant to its bad faith claim. *See* Dkt. no. 45 pp. 5-6. Specifically, Penford argued this information is relevant to proving that the Insurers knew or had reason to know that their "denial of coverage for Penford's claim"[1] was unreasonable.

However, whether the Insurers had a reasonable basis for refusing to pay amounts in excess of the Cedar Rapids flood sublimits turns directly on an interpretation of the language contained in the "Limits" section of the policy. If the Insurers' interpretation of the Cedar Rapids flood sublimits is reasonable (whether or not their interpretation is right), the Insurers cannot be in bad faith, *as a matter of law*, regarding their refusal to pay more than $20 million for loss and damage in flood Zones A and B. *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005). Conversely, in the unlikely event that the Court adopts Penford's interpretation of the Cedar Rapids flood sublimits *and* rules that the Insurers' interpretation is not reasonable, nothing about other claims not involving a dispute over location specific – flood zone based sublimits will shed any light on whether the Insurers knew or had reason to know that their refusal to pay more than $20 million for loss and damage in flood Zones A and B was unreasonable. To the extent Penford claims the Insurers acted in bad faith in "delaying" payment under the policy, whether there was a reasonable basis for the alleged "delay" turns on the unique and very specific circumstances and obstacles confronted in adjusting this particular claim including, importantly, the timing, accuracy and completeness of the information submitted by Penford as documentation of its claimed losses. Again, nothing contained in any other claim file will shed any light on whether the Insurers "delayed" their payment of more than $20 million here.

---

[1] The Insurers did not deny coverage for Penford's claim. To the contrary, they paid $20 million under the Cedar Rapids flood sublimits and more than $400,000 for loss and damage sustained in flood Zone C.

10
Case 1:09-cv-00013-LRR-JSS   Document 52-2   Filed 11/06/09   Page 10 of 20

The Court must consider the applicable policy language – drafted by Penford for its own specific needs – and the facts and circumstances of the adjustment of this particular claim in determining whether the Insurers knew or should have known there either was or was not a reasonable basis for the actions they took. In other words, because of the unique manuscript policy language, the Insurers' adjustment of other flood claims under other policies is not relevant to whether the Insurers acted in bad faith in paying $20 million under the Cedar Rapids flood sublimits. Similarly, because of the unique circumstances of adjusting this claim – including the various flood zones at the plant, the assignment of the GAB adjuster requested by Penford, and the documentation requested by the adjuster and the timeliness, accuracy and completeness of that information provided by Penford - the Insurers' adjustment and payment of other flood claims under other policies is not relevant to whether the Insurers acted in bad faith in allegedly "delaying" payment.

Moreover, none of the cases cited by Penford in support of its contention that other flood claims are relevant to its bad faith claim apply here. *See* Dkt. no. 45, p. 5. In virtually all of those cases, there was an allegation that the insurer was engaging in a ***pattern or practice or common scheme*** of improper claims handling.[2] Here, Penford has not, and cannot, make such an allegation. The only contention in this case is that ***this claim*** was improperly handled. For all the reasons just discussed, that issue turns solely on the facts and circumstances of this case, and information and documents from other 2008 flood claims is irrelevant.

Penford's further contention, that other claims information is relevant and discoverable for purposes of interpreting the policy language (*see* Dkt. no. 45, pp. 6-7), rings hollow in light of the fact that Penford has already conceded in its own dispositive motion that extrinsic evidence is irrelevant to the interpretation of the "Limits" section, wording drafted by Penford

---

[2] In *Paolo v. AMCO Ins. Co.*, 2003 WL 24027877 (N.D. Cal.), the Court provided no explanation for its decision.

and/or Marsh to suit Penford's perceived and unique insurance needs. In the cases cited, the other claims largely interpreted and applied the very terms at issue in factual scenarios largely the same as that before the court. Here, Penford had a manuscript policy, drafted by and unique to it, for flood coverage at its plant which spanned several different flood zones. Other 2008 flood claims not involving a dispute over the scope of the Cedar Rapids flood sublimits has no bearing on any issue in this case.

Finally, the information should be protected from discovery because it contains information confidential to the other policyholders submitting the claims. The Insurers have no authority to disclose the identity of any policyholder – or its counsel – that has made a claim as a result of the 2008 flood. Penford refused to produce any documents in this case without having a sweeping protective/confidentiality order entered. Yet, Penford apparently sees nothing wrong in trampling the privacy rights and confidentiality concerns of the other claimants. Penford cannot seriously contend that its privacy concerns outweigh those of other claimants. The information contained in these files is subject to the Insurers' non-disclosure policies and may be subject to state statutes regarding the confidentiality of claim information. (See Affidavit of Joseph E. Smith, Exhibit D, at paragraphs 8-11; Affidavit of Thomas D. Casson, Exhibit E, at paragraphs 11-12).

### B. Information and Documents Concerning Any Bad Faith Claims is Irrelevant to Penford's Claims in This Action and, Further, the Request is Overbroad and Unduly Burdensome.

Penford seeks information and documents related to other bad faith *claims* asserted against the Insurers since 2005. Penford never defines what is meant by a "bad faith claim." Therefore, the Insurers are left to wonder whether Penford means "bad faith lawsuits," complaints to state Insurance Departments, threats to sue for bad faith or all of the above.

Penford's requests specifically seek all bad faith claims (undefined), since 2005, related to the Insurers' alleged failure to properly or timely pay claims for time element losses, contingent time element losses, extra expenses, debris removal or professional fees. However, the dispute here is not about when or how these coverages apply but, rather, whether these coverages are subject to the specific Cedar Rapids flood sublimits in Penford's manuscript policy. Yet, Penford seeks information on other disputes having nothing to do with location specific – flood zone based sublimits. Penford does not even confine its requests to bad faith claims in Iowa. Under Penford's logic, the handling of a claim in New Mexico involving a dispute under New Mexico law over the payment of expenses to remove the debris of a burned house (thereby implicating the "debris removal" coverage contained in virtually every first-party policy of insurance), could have some relevance to Penford's claims arising from the application of the specific policy sublimits for flood in Cedar Rapids. Penford is clearly on a classic fishing expedition.

The arguments and case law presented in the previous section with respect to other 2008 flood claims apply with equal, if not greater force, to other bad faith "claims" going as far back as 2005, and having nothing whatsoever to do with the interpretation, application or handling of location specific – flood zone based sublimits like those at issue here. See, for example, the discussion, *supra*, of *Moses v. State Farm Mut. Auto. Ins. Co.*, 104 F.R.D. 55 (D.C. Ga. 1984); *Cunningham v. Standard Fire Ins. Co.*, 2008 WL 2902621 (D. Col. 2008); *Connecticut Indem. Co. v. Markman,* 1993 WL 452104 (E.D. Pa. 1993); *Leeson v. State Farm Mut. Auto. Ins. Co.,* 546 N.E.2d 782 (Ill. App. 1st Div. 1989); and *United States Fire Ins. Co. v. Clearwater Oaks Bank,* 421 So.2d 783, 784 (Fla. App. 2nd Dist. 1982).

Judge Bennett considered a similar request in *St. Paul Reinsurance Co. Ltd. v. Commercial Financial Corp.,* 197 F.R.D. 620 (N.D. Iowa 2000), and denied the policyholder's

13

request for such information. In that case, the policyholder asserted claims of breach of contract and bad faith against its insurers for denying coverage for wrongful termination claims. In discovery, the policyholder sought information concerning prior bad faith claims asserted against the insurers. The policyholder argued such information was relevant to establishing, under Iowa bad faith law, that the insurers "knew or should have known" their denial (and, in that case, rescission of the policy) was without reasonable basis. Distinguishing the Tenth Circuit case of *Vining v. Enterprise Financial Group, Inc.,* 148 F.3d 1206 (10th Cir. 1998), Judge Bennett noted that the policyholder in the case before him had never contended the insurers relied on a reason different than that asserted in the litigation as the basis for denying the claim. *St. Paul,* 197 F.R.D. at 644. In other words, the reason the insurers originally gave for denying the claim – failure to disclose material information (the prior termination of certain employees) – was the same as that asserted in the subsequent breach of contract/bad faith litigation. *Id.* Because the only contention was that the actual reason given for denying the claim was not a proper reason (as opposed to a contention that, for instance, the insurer denied the claim based upon a systematic scheme to rescind all employment practices policies), Judge Bennett held that information concerning other bad faith cases was irrelevant. According to Judge Bennett, the issue of whether the insurer knew or should have known its denial was allegedly without a reasonable basis could and should be evaluated based only upon the facts and circumstances of that case:

> [P]ermitting [the insured] to discover information about other bad
> faith claims against the [insurers] would be to authorize a 'fishing
> expedition' with little or no relevance to the merits of the bad faith
> claim as framed by the party asserting it. The proper question as to
> the 'knowledge' element of [the insured's] bad faith claim in this case
> is whether the [insurers] knew or had reason to know that their denial
> on the basis of a non-disclosure of material information was without a
> reasonable basis, that is, whether it was unreasonable to believe that a

> failure to disclose had occurred or unreasonable to believe that a material
> non-disclosure was a ground for denying coverage.

*Id. See also North River Ins. Co. v. Greater New York Mut. Ins. Co.,* 872 F.Supp. 1411 (E.D. Pa. 1995) ("These prior bad faith cases, if any, will necessarily involve totally different facts and circumstances from those present here. Such information not only is highly unlikely to have any relevance to whether or not [the insurer] acted in bad faith in the [underlying lawsuit against the insured] but does not even 'appear reasonably calculated to lead to the discovery of admissible evidence.' [citation omitted]. Any discovery of this material would properly be characterized as a fishing expedition, causing needless expense and burden to all concerned. Allowing such discovery would also run counter to the important but often neglected Rule 1 of the Federal Rules of Civil Procedure which requires that all rules 'shall be construed and administered to secure the just, speedy and inexpensive determination of every action.'").

Here, for its bad faith claim, Penford claims that it was unreasonable for the Insurers to apply the Cedar Rapids flood sublimits as they did. Penford further claims that the Insurers unreasonably delayed in paying Penford's claim. As in *St. Paul,* other bad faith claims are irrelevant to whether the Insurers knew or should have known they allegedly had no reasonable basis for failing to pay amounts in excess of the $20 million sublimits or no reasonable basis for allegedly delaying payments. The proper questions as to the "knowledge" element of the bad faith claim are whether it was unreasonable to believe that the Cedar Rapids flood sublimits applied to all losses, not simply property damage, and whether the timing of the payments was unreasonable given the facts and circumstances of the process of adjusting Penford's claim. Other bad faith claims arising under different policies in different factual scenarios have no bearing on these unique and Penford-specific issues.

Additionally, Penford's requests with respect to "any bad faith claims asserted against [the Insurers] since 2005" is overbroad. Penford has neglected to define "bad faith claims" so, theoretically, the "bad faith claims" sought are not limited to litigated actions but include all allegations or assertions of bad faith made at any time during the claims handling process. It is not uncommon for insureds (or their attorneys) to utter the phrase "bad faith" at some point during the claims adjustment process for the purpose of trying to intimidate the insurer into retreating from a position it has taken. These instances could be countless in number, have absolutely no validity, yet technically fall within Penford's requests.

Finally, it would be unduly burdensome for the Insurers to produce the requested information. Penford seeks all bad faith claims, since 2005, related to the Insurers' alleged failure to properly or timely pay claims for time element losses, contingent time element losses, extra expenses, debris removal or professional fees. The Insurers do not index or track their files by reference to specific coverages. (Affidavit of Joseph E. Smith, Exhibit D, at paragraph 4; Affidavit of Thomas D. Casson, Exhibit E, at paragraph 6). Additionally, the Insurers do not index or track their files by reference to "bad faith claims." (Smith Affidavit at para. 5; Casson Affidavit at para. 7). Most property insurance policies sold to commercial insureds offer some type of time element coverage that protects the insured against certain financial losses which result from physical damage to property. By "limiting" the request to claims involving time element coverages, Penford has not materially limited the universe of potentially responsive documents.

In order to obtain the information requested, the Insurers would be required to locate and manually examine every property claim file for the last four years to determine whether it involved: a) a bad faith claim; and b) one of the listed coverages. (Smith Affidavit at para. 6;

16

Casson Affidavit at para. 8 and 9). Each Insurer has estimated the number of hours it would take to compile a list of these files, to locate them, and to manually read them to determine whether they involved a bad faith claim responsive to Penford's requests. (Smith Affidavit at para. 6; Casson Affidavit at para. 8). The cost of this exercise could well exceed $3 million. (Smith Affidavit at para. 6 and 7; Casson Affidavit at para. 8, 9 and 10; Affidavit of Gregory M. Lederer, Exhibit F, at paragraphs 1 and 2).

Further, Penford has not isolated its requests to bad faith claims arising in Iowa.[3] Much of the information sought may be subject to various states' privacy laws. (Smith Affidavit at para. 8; Casson Affidavit at para. 11). Additionally, much of the information sought may be the subject of either of the Insurers' corporate privacy policies put in place to protect their policyholders. (Smith Affidavit at para. 10; Casson Affidavit at para. 12). Each Insurer would have to expend time and money to review the potentially responsive information and documents for compliance with applicable confidentiality and privacy authorities and policies and to either redact the confidential information or obtain confidentiality waivers from the involved parties or contact each individual claimant to notify them of the dissemination of their claim file material and to afford them the opportunity to seek legal remedies in advance of the production. (Smith Affidavit at para. 9-11; Casson Affidavit at para. 11-12).

Clearly, even if other bad faith claims were relevant, the Insurers would encounter substantial difficulties that stand as impediments to producing that information. Where insurers have faced such difficulties to producing information concerning other bad faith claims, Judge Bennett, in *St Paul,* held that production of the information was unduly burdensome in relation to

---

[3] To the extent any of the bad faith claims sought arose in a state other than Iowa with a bad faith standard different than Iowa's, those claims are further irrelevant to the issue of whether Penford can establish the Insurers are subject to bad faith liability under Iowa law.

the likely benefits and denied the policyholder's request for such information. *St. Paul,* 197 F.R.D. at 644-45. This Court should do likewise.

## CONCLUSION

For all the reasons set forth above, the Insurers respectfully request that the Court enter a Protective Order precluding Penford from discovering the information sought in Interrogatories 5, 6 and 7 of Plaintiffs' First Set of Interrogatories, in Requests 2, 3, 4 and 5 of Plaintiffs' Second Set of Requests for Production of Documents, and in Subject Matters for Inquiry 22, 23 and 24 of Plaintiffs' Notices to Take Oral Depositions under Rule 30(b)(6).

WHEREFORE, Defendants, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA and ACE AMERICAN INSURANCE COMPANY, respectfully request that the Court enter a Protective Order precluding Penford from discovering the information sought by it in Interrogatories 5, 6 and 7 in Plaintiffs' First Set of Interrogatories, in Requests 2, 3, 4 and 5 in Plaintiffs' Second Set of Requests for Production of Documents, and in Subject Matters for Inquiry 22, 23 and 24 of Plaintiffs' Notices to Take Oral Depositions under Rule 30(b)(6), and grant such other and further relief as the Court deems just and equitable.

Date: November 6, 2009     Respectfully submitted,

**FORAN GLENNON PALANDECH & PONZI PC**

/s/ Thomas B. Orlando
Thomas B. Orlando
Matthew S. Ponzi
222 North LaSalle Street, Suite 1400
Chicago, IL 60601
Telephone: 312.863.5000
Facsimile: 312.863.5099
E-mail: mponzi@fgpp.com
E-mail: torlando@fgpp.com

**LEDERER WESTON CRAIG PLC**

/s/ J. Michael Weston
J. Michael Weston  AT0008405
Gregory M. Lederer  AT0004668
Brenda K. Wallrichs  AT0008203
118 – 3rd Avenue SE, Suite 700
P. O. Box 1927
Cedar Rapids, IA  52406-1927
Telephone:  319.365.1184
Facsimile:    319.365.1186
E-mail:  mweston@lwclawyers.com
E-mail:  glederer@lwclawyers.com
E-mail:  bwallrichs@lwclawyers.com

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of November, 2009, I electronically filed the foregoing with the Clerk of the U.S. District Court for the Northern District of Iowa, Cedar Rapids Division, using the ECF system which will send notification of such filing to the following:

**Counsel for Plaintiffs:**
Roger W. Stone
E-mail:  rstone@simmonsperrine.com

Jeffrey K. McGinness
E-mail:  jmcginness@simmonsperrine.com

Thomas M. Reiter
E-mail:  thomas.reiter@klgates.com

Neal R. Brendel
E-mail:  neal.brendel@klgates.com

Douglas J. Simmons
E-mail:  doug.simmons@klgates.com

Paul C. Fuener
E-mail:   paul.fuener@klgates.com

Christopher C. French
E-mail:  chris.french@klgates.com

**Counsel for Defendants:**
J. Michael Weston
E-mail: mweston@lwclawyers.com

Gregory M. Lederer
E-mail: glederer@lwclawyers.com

Brenda K. Wallrichs
E-mail: bwallrichs@lwclawyers.com

Matthew S. Ponzi
E-mail: mponzi@fgpp.com

Thomas B. Orlando
E-mail: torlando@fgpp.com

I certify under penalty of perjury that the foregoing is true and correct. Executed this 6th day of November, 2009 in Chicago, Illinois.


                /s/ Thomas B. Orlando