**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| **PENFORD CORPORATION and PENFORD PRODUCTS CO.,**<br>**Plaintiffs,**<br>**vs.**<br>**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA and ACE AMERICAN INSURANCE COMPANY,**<br>**Defendants.** | **No. C09-0013**<br>**RULING ON MOTION FOR PROTECTIVE ORDER** |

---

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . 2

*II. ISSUE PRESENTED* . . . . . . . . . . 2

*III. RELEVANT FACTS* . . . . . . . . . . 2
- *A. The Lawsuit* . . . . . . . . . . 2
- *B. The Requested Discovery* . . . . . . . . . . 3

*IV. DISCUSSION* . . . . . . . . . . 4
- *A. Other Claims or Lawsuits Resulting from the 2008 Cedar River Flood* . . . . . . . . . . 4
- *B. Other Lawsuits Filed Since 2005 Involving Claims for Time Element Losses and Bad Faith* . . . . . . . . . . 8

*V. ORDER* . . . . . . . . . . 11

## *I. INTRODUCTION*

On the 13th day of November 2009, this matter came on for telephonic hearing on the Motion for Protective Order (docket number 52) filed by the Defendants on November 6, 2009. The Plaintiffs were represented by attorneys Douglas J. Simmons, Christopher C. French, Roger F. Stone, and Jeffrey K. McGinness. The Defendants were represented by attorneys Thomas B. Orlando, Matthew S. Ponzi, and J. Michael Weston.

## *II. ISSUE PRESENTED*

Defendants seek a protective order, limiting the scope of Plaintiffs' requested discovery. Specifically, Defendants argue that they should not be required to provide information relating to (1) other claims or lawsuits resulting from the 2008 Cedar River flood, or (2) other lawsuits filed since 2005 involving claims for time element losses and bad faith.

## *III. RELEVANT FACTS*

### *A. The Lawsuit*

On January 23, 2009, Plaintiffs Penford Corporation and Penford Products Co., (collectively, "Penford") filed a Complaint (docket number 1) seeking declaratory judgment and damages from Defendants National Union Fire Insurance Company of Pittsburgh, PA, and Ace American Insurance Company. Penford claims that Defendants have failed to fully reimburse Penford for covered losses following a flood in June 2008. Penford seeks a declaratory judgment regarding the benefits covered by the policies (Count One) and compensatory damages for breach of contract (Count Two). In addition, Penford seeks damages for Defendants' alleged "bad faith denial or delay of insurance benefits" (Count Three). Defendants deny Penford's material allegations and assert various affirmative defenses.

Penford conducts manufacturing operations at its facility in Cedar Rapids, Iowa. In June 2008, Penford's Cedar Rapids plant was flooded and suffered substantial property damage. Defendants provided insurance coverage for Penford's facility at that time.

Among other things, the policy provided a $10 million "sublimit" for flood damages to "Zone A," as defined in the policy, and a $10 million sublimit for flood damages to "Zone B." Defendants have paid Penford $20 million for flood damages sustained in Zones A and B.

In addition to coverage for property losses, the policy contained certain "time element coverages," providing coverage for losses caused by business interruption. The policy also provided additional coverages for debris removal, decontamination costs, contaminant or pollutant clean up, and professional fees. Penford claims that it is entitled to additional benefits for losses falling under the time element coverages and additional policy coverages. According to Penford, its covered losses will exceed $50 million. Penford requests that the Court "declare Penford's rights and Defendant Insurance Companies' obligations under the Policy," and that it award compensatory damages for breach of contract. Penford also asks that it be awarded damages for Defendants' alleged bad faith in denying Penford benefits which are due under the policy, and "unreasonably delaying undisputed payments under the Policy."

### *B. The Requested Discovery*

On September 15, 2009, Penford served Defendants with a notice to take oral depositions under Rule 30(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE.[1] Among the "subject matters for inquiry" identified in the notice were all claims or lawsuits against Defendants arising from losses sustained from the Cedar River flood of June 2008. On October 12, 2009, Penford served Defendants with its first set of interrogatories and second set of requests for production of documents.[2] Penford's first set of interrogatories asks Defendants to identify the policyholder and the policyholder's counsel for all claims or lawsuits against Defendants as a result of the June 2008 flood. The second set of

---

[1] *See* Defendant's Motion for Protective Order, Exhibit C (docket number 52-5).

[2] *See* Defendant's Motion for Protective Order, Exhibits A and B (docket number 52-3 and 52-4).

requests for production of documents asks Defendants to produce all documents relating to those claims or lawsuits.

In its Rule 30(b)(6) notice, Penford also identifies, as an additional subject matter for inquiry, "[a]ll bad faith claims asserted against you since 2005 relating to your alleged failure to properly or timely pay claims for time element losses (including but not limited to business interruption losses), contingent time element losses, extra expenses, debris removal, or professional fees." Penford's first set of interrogatories asks Defendants to identify the policyholder and policyholder's counsel associated with "all bad faith claims" meeting that criteria. Penford's second set of requests for production seeks "all documents" relating to the same subject matter. While Penford's requested discovery refers to all bad faith "claims," in its response to the instant motion for protective order, Penford limits its requests to bad faith "lawsuits."[3] In response to the requested information, Defendants filed the instant motion for protective order.

## *IV. DISCUSSION*

### *A. Other Claims or Lawsuits Resulting from the 2008 Cedar River Flood*

Penford claims entitlement to recover additional amounts from Defendants for losses sustained as a result of the historic Cedar River flood in 2008. In pursuing those claims, Penford asks that Defendants be required to answer questions, produce documents, and testify regarding claims brought by *other* policyholders as a consequence of the same flood. Defendants resist, arguing that claims by other policyholders are not relevant to Penford's claim, and that production of the requested information would require disclosure of "information confidential to the other policyholders."

The FEDERAL RULES OF CIVIL PROCEDURE authorize broad discovery. *See* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."). In a discovery context,

---

[3] *See* Penford's Memorandum in Opposition at 15 (docket number 56 at 17).

relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). As the parties resisting production of the requested information, Defendants bear the burden of establishing lack of relevancy. *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000).

> The party must demonstrate to the court "that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."

*Id.* (quoting *Burke v. New York City Police Dept.*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987)).

The principal fighting issue in Penford's breach of contract claim is whether certain sublimits found in the policy apply only to property damage sustained by Penford, or also extend to its time element damages. This issue is the subject of competing motions for partial summary judgment. *See* docket numbers 33 and 40. Penford argues that the time element claims, and other claims, have their own sublimits, and "do not roll up into" the two $10 million sublimits for Zones A and B. Defendants argue that the two $10 million sublimits are inclusive of Penford's claim for time element damages.

Evidence of claims by other policyholders is not relevant to a resolution of this issue. Penford's contract claim will stand or fall on its own merits, based on the provisions of the policy negotiated by the parties, irrespective of any claims made by others. Penford admits as much in its motion for partial summary judgment, when it asserts that "no review of extrinsic evidence is required" to resolve the question of which sublimits apply to what losses.[4] Whether another policyholder filed a claim or is entitled

---

[4] *See* Plaintiffs' Motion for Partial Summary Judgment at 4, ¶¶ 12-13 (docket (continued...)


to recover under another insurance contract is not relevant to the question of whether Penford is entitled to recover under these insurance contracts. *See Taco, Inc. v. Federal Insurance Company*, 2007 WL 4269810 (D.R.I.) (in a breach of insurance contract case, claims of other insureds were not relevant and, therefore, not discoverable); *Ramirez v. American Family Mut. Ins. Co.*, 652 N.E.2d 511, 517 (Ind. App. 1995) ("Information regarding other claims made by other insureds under other contracts is not relevant to the coverage afforded under the Ramirezes' insurance policy.").

Penford also asserts, however, that information regarding claims by other policyholders is relevant to its claim that Defendants acted in bad faith. Penford's bad faith claim has two components: first, that Defendants' denial of claims in excess of $20 million was in bad faith; and second, that even if Penford is not entitled to any additional benefits, Defendants acted in bad faith in delaying payment of the benefits now received. To recover on its claim of bad faith, Penford must prove (1) Defendants had no reasonable basis for denying Penford's additional claim for benefits, or delaying the payment of benefits which were due, and (2) Defendants knew or had reason to know that their denial or delay was without reasonable basis. *See Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005).

The Court turns first to Penford's claim that Defendants acted in bad faith in denying Penford's claims in excess of $20 million. As set forth above, Penford's contract claim must stand or fall on the policy negotiated by the parties, and no other. Similarly, whether Defendants' interpretation of the policy is reasonable must be decided without regard to claims made by other policyholders. Even *if* it is determined that Defendants had no reasonable basis for denying Penford's additional claim for benefits, the Court concludes that claims by other policyholders are not relevant to the issue of whether Defendants had reason to know they were acting without a reasonable basis. Even if one

---

[4](...continued)
number 33 at 4).

assumes that the other policies were similar to the one at issue here, the mere filing of claims by other policyholders is not relevant to the issue of whether Defendants knowingly acted unreasonably in denying Penford's claim for additional benefits.[5]

The Court now considers Penford's claim that Defendants acted in bad faith in *delaying* the payment of benefits. Penford asserts that information regarding the adjustment of other claims may establish "a pattern of deliberate, dilatory behavior" by Defendants in the adjustment of losses, thereby supporting Penford's claim of bad faith delay in the payment of losses.[6] According to Penford, "such evidence would tend to prove that the Insurers had no reasonable basis, and knew they had no reasonable basis, for denying or delaying payment on Penford's claims."[7] Penford has separately requested information regarding bad faith claims asserted against Defendants relating to "alleged failure to properly or timely pay claims for time element losses," and other losses of the type claimed by Penford here. That issue will be discussed below.

Even if claims made by others are marginally relevant to the issues here, the Court believes that Defendants raise legitimate privacy concerns. Penford seeks "all documents" relating to time element loss claims by other policyholders. Compliance with this request would require Defendants' disclosure of confidential information pertaining to companies with no interest in this lawsuit. At the time of hearing, Defendants' counsel suggested that one of the other claimants may be a competitor of Penford. The protective order agreed

---

[5] The parties dispute the uniqueness of the policy negotiated between them. Defendants claim that "[t]he policy is specific and unique to Penford and is not a standard form." *See* Defendants' Brief in Support of Motion for Protective Order at 5 (docket number 52-2 at 5). Penford asserts that the policy "may contain form language that is identical or materially similar to language in policies issued by the Insurer-Defendants to other policyholders, including ones impacted by the June 2008 food [*sic*] at Cedar River." *See* Penford's Memorandum in Opposition at 5 (docket number 56 at 7).

[6] *See* Penford's Memorandum in Opposition at 6 (docket number 56 at 8).

[7] *Id.*

to by the parties does not adequately address the legitimate concerns of third-parties regarding the release of confidential business information. Penford's suggestion that Defendants redact those parts which their other policyholders may find confidential does not adequately address the issue either. The "potential harm occasioned by discovery" of these documents outweighs the marginal relevance of the information, if any. *St. Paul Reinsurance*, 198 F.R.D. at 511. The Court concludes that under these circumstances, Defendants are not required to produce documents related to claims made by third-parties.

### *B. Other Lawsuits Filed Since 2005 Involving Claims for Time Element Losses and Bad Faith*

Penford also seeks information relating to any lawsuits filed against Defendants since 2005 relating to claims for time element losses and alleged bad faith.[8] Defendants resist for the same reasons previously asserted -- that is, lack of relevancy and privacy concerns regarding confidential information of third-parties. In addition, Defendants assert that compliance with the requests would be unduly burdensome.

The Court concludes, for the reasons detailed above, that the information sought by Penford is not relevant to its contract claim. How the policy language regarding sublimits will be applied to the circumstances present here will be determined without regard to bad faith claims made by others. Information regarding other bad faith claims may, however, have some relevance in establishing Penford's bad faith claim. If Defendants engage in a pattern of deliberate, dilatory behavior in delaying reimbursement to policyholders for legitimate losses, then such evidence may support Penford's claim that Defendants knowingly delayed payment here. *Poneris v. Pennsylvania Life Ins. Co.*, 2007 WL 3047232 (S.D. Ohio) (permitting discovery of other claims in an action for bad faith denial of insurance coverage); *Paolo v. Amco Ins. Co.*, 2003 WL 24027877 (N.D. Cal.) (same). That is, lawsuits alleging Defendants' bad faith in the adjustment of time element losses

---

[8] Penford's discovery requests refer to "any bad faith claims," but in its response to the instant motion, Penford limits its request to lawsuits.

could "bear on" Penford's claim that Defendants acted in bad faith here. *Oppenheimer Fund*, 437 U.S. at 351. *See also Davis v. Union Pacific R.R. Co.*, 2008 WL 3992761 (E.D. Ark.) at *2 ("A request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."); *Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006) (same).

Even if the information sought is marginally relevant, however, the Court must still consider Defendants' argument that compliance with the discovery requests requires disclosure of confidential information of third-parties. In its first set of interrogatories (as amended in its memorandum in opposition to the instant motion), Penford asks Defendants to:

> Please IDENTIFY, including the IDENTITIES of the policyholder and the policyholder's counsel, all bad faith [lawsuits] asserted against YOU since 2005 RELATING TO YOUR alleged failure to properly or timely pay claims for time element losses (including but not limited to business interruption losses), contingent time element losses, extra expenses, debris removal, or professional fees.

*See* Plaintiffs' First Set of Interrogatories at 6, ¶ 7 (docket number 52-3 at 6). Penford's second set of requests for production of documents asks Defendants to produce "all documents" relating to the same lawsuits.

Significantly, Penford's request is not limited to documents filed in the other lawsuits (which are part of a public record), but instead asks for "all documents" related to any lawsuits since 2005 involving bad faith and time element or related losses. As discussed above, compliance with this request would require Defendants to disclose confidential business information of companies which have no interest in this case. Since the potential harm of such disclosures outweighs any marginal relevance, the Court concludes that Penford's request for "all documents" relating to other lawsuits should be denied. *St. Paul Reinsurance*, 198 F.R.D. at 511.

In addition to its document request, however, Penford asks Defendants in its interrogatories to simply identify the lawsuits meeting the described criteria. This request does not require Defendants to disclose confidential information, but does implicate their argument that responding to the request will be unduly burdensome.

In their brief filed in support of the motion for protective order, Defendants address the process which would be required to obtain the discovery initially sought by Penford.

> In order to obtain the information requested, the Insurers would be required to locate and manually examine every property claim file for the last four years to determine whether it involved: a) a bad faith claim; and b) one of the listed coverages.

*See* Brief in Support of Motion for Protective Order at 16 (docket number 52-2 at 16). According to the affidavit of Joseph E. Smith, Senior Vice-President of Ace American Insurance Company, Ace USA does not "index or track" its files by reference to coverage for contingent time element losses, extra expenses, debris removal, or reference to "bad faith claims."[9] Apparently, however, Ace USA does track its files relating to time element claims. "A search for all Ace USA property claims with time element issues ONLY since 2005 yielded 1,035 possible claim files."[10] Similarly, Thomas D. Casson, vice-president for the division handling these claims for National Union Fire Insurance Company, avers that its claims unit "does not index, track, or otherwise delineate National Union's claim files by reference to coverage or claims for time element losses such as business interruption, contingent time element losses, extra expenses, debris removal or professional fees."[11] According to Mr. Casson, to obtain the information requested by Penford, "a file by file review of every property insurance claim would be required by an

---

[9] *See* Affidavit of Joseph E. Smith at 2, ¶¶ 4-5 (docket number 52-6 at 2).

[10] *Id.*, ¶ 6.

[11] *See* Affidavit of Thomas D. Casson at 2, ¶ 6 (docket number 52-7 at 2).

experienced examiner capable of accurately identifying the specific types of delineated claims."[12] According to Defendants, "[t]he cost of this exercise could well exceed $3 million."[13]

After Defendants filed the instant motion for protective order, however, Penford reduced the scope of its requested discovery from all bad faith "claims" to all bad faith "lawsuits." In addition, the Court has now concluded that Defendants are not required to produce the documents requested by Penford in this regard. Identifying lawsuits which have been filed during the applicable time period and meet the search criteria does not require disclosure of confidential information. If provided with such a list, Penford could then review the public record, if it chose to do so, to search for relevant information. Based on the affidavits submitted with the motion for protective order, the Court is unable to determine whether production of a list of *lawsuits* which meet the search criteria would be unduly burdensome. Accordingly, the Court directs Defendants to submit supplemental affidavits, describing the process for identifying lawsuits against Defendants since 2005 alleging bad faith claims arising out of Defendants' "alleged failure to properly or timely pay claims for time element losses, contingent time element losses, extra expenses, debris removal, or professional fees."

## *V. ORDER*

IT IS THEREFORE ORDERED that the Motion for Protective Order (docket number 52) filed by Defendants is hereby **GRANTED** in part and **RULING IS RESERVED** in part as follows:

1. Defendants need not respond to interrogatories numbers 5 and 6 of Penford's first set of interrogatories, provide the documents requested in paragraphs 2 and 3 of Penford's second set of requests for production of documents, or respond to questions at

---

[12] *Id.*, ¶ 7.

[13] *See* Brief in Support of Motion for Protective Order at 17 (docket number 52-2 at 17).

oral depositions regarding subject matters set forth in paragraphs 22 and 23 of the Rule 30(b)(6) notice.

2. Defendants need not produce documents requested in paragraph 4 of Penford's second set of requests for production of documents, or respond to questions at oral deposition on the subject matter set forth in paragraph 24 of the Rule 30(b)(6) notice.

3. Not later than November 25, 2009, Defendants shall provide supplemental affidavits describing the process for identifying lawsuits meeting the criteria found in interrogatory number 7 of Penford's first set of interrogatories. The Court reserves ruling on whether Defendants must identify the lawsuits meeting the search criteria found in that interrogatory.

DATED this 19th day of November, 2009.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA